IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| TIMOTHY R. LUCE, MD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:22-cv-853 |
| | § | |
| HEART OF TEXAS COMMUNITY | § | |
| HEALTH CENTER, INC. D/B/A | § | |
| WACO FAMILY MEDICINE, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND
DEMAND FOR JURY TRIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, TIMOTHY R. LUCE, MD (hereinafter sometimes referred to as "Dr. Luce"), by and through his counsel, hereby files this Complaint against Defendant, HEART OF TEXAS COMMUNITY HEALTH CENTER, INC. D/B/A WACO FAMILY MEDICINE (hereinafter sometimes referred to as "Waco Family Medicine"), for willful violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), the Civil Rights Act of 1964, as amended ("Title VII") and the Texas Labor Code §21.051 *et seq.* ("TCHRA"). In support of his causes of action, Plaintiff states the following:

**I.
PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, TIMOTHY R. LUCE, MD, is an individual residing in Waco, Texas.

2. Defendant, HEART OF TEXAS COMMUNITY HEALTH CENTER, INC. D/B/A WACO FAMILY MEDICINE, is a corporate entity formed and existing under the laws of the State of Texas, having offices in Waco, Texas.

3. This Court has jurisdiction to hear the merits of Dr. Luce's claims under 28 USC § 1332(a).

4. Dr. Luce exhausted his administrative remedies under the ADEA and the TCHRA by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission and Texas Workforce Commission and receiving a Right to Sue letter.

5. Venue is proper in this district and division under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## II.
## FACTUAL BACKGROUND

6. Dr. Luce was employed by Defendant from June 17, 2019, until July 15, 2020.

7. Dr. Luce worked at Defendant's location in Waco, Texas.

8. At the time of his termination, Dr. Luce was employed by WACO FAMILY MEDICINE as a physician in the three-year residency training program.

9. Dr. Luce's job responsibilities included inpatient management, admissions and discharge, outpatient clinical work, all phases of family medicine residency, and medical documentation, notation and treatment planning.

10. Dr. Luce was a skilled, productive employee without any significant disciplinary history.

11. Dr. Luce was 56 years old when Waco Family Medicine selected him for the residency program. He was substantially older than the other thirty-five (35) resident physicians in the program, most of which were under the age of forty (40).

12. Around September of 2019, Michael Jahrmarkt (hereinafter sometimes referred to as "Jahrmakt"), Attending Faculty Member, told Dr. Luce that he had to read material 5-6 times because he had a "50-year-old brain", whereas Dr. Luce's colleagues in their 20s can read it once

and they got it.  Dr. Luce disagreed with and told Jahrmakt that Dr. Luce had just successfully finished medical school.  Dr. Luce immediately reported Jahrmarkt's discriminatory comment to Mike Hardin (hereinafter sometimes referred to as "Hardin"), Program Director, and Burritt Hess (hereinafter sometimes referred to as "Hess"), Associate Program Director.  Hardin and Hess acknowledged the discriminatory comment was inappropriate but failed to do anything in response.

13.     In December of 2019, Dr. Luce again complained to Hess about age discrimination that went unaddressed, including ageist comments from Jarhmarkt and Varun Nagarajan, a third year Resident.  Dr. Luce said he just wanted to be evaluated on his abilities and not stereotyped because of his age.

14.     On January 30, 2020, Dr. Luce again complained to Hardin about age discrimination, as witnessed by Jennifer Jensen, Chief Resident.  Hardin said that Dr. Luce was just not taking feedback well.

15.     On February 5, 2020, Hardin and Hess issued Dr. Luce a remediation plan.  This plan was primarily focused on his "receptivity to feedback."  Dr. Luce again complained to Hardin and Hess that he was being subjected to age discrimination, as witnessed by Casey Leamon (hereinafter sometimes referred to as "Leamon"), Resident.

16.     In March 2020, Sally Weaver (hereinafter sometimes referred to as "Weaver"), Attending Faculty Member, said that Dr. Luce did not learn as quickly as his younger colleagues because of his age, which made his brain not work like theirs.  Dr. Luce immediately reported this discriminatory comment to Hess.

17.     On March 19, 2020, Hardin and Hess extended the remediation plan issued on February 5, 2020 for another six weeks, even though Hardin and other faculty members wrote in

3

his evaluations that Dr. Luce had only improved. Dr. Luce again complained to Hardin and Hess, as witnessed by Leamon, that he was being subjected to age discrimination and that Hardin's discipline was inconsistent with the written and verbal feedback Dr. Luce received from my attending physicians supervising my work.

18. On April 28, 2020, Hardin and Hess placed Dr. Luce on a 60-day academic probation. Hardin continued to critique Dr. Luce's response to feedback and performance, in contradiction with the feedback from my supervisors. Dr. Luce again told Hardin and Hess that Respondent's actions were motivated by his age, as witnessed by Leamon.

19. On May 25, 2020, Horacio Sosa, MD (in his 30's), Attending Faculty Member, wrote the following in an email to Hardin and Hess: "**I have asked Tim to please respect his age. He is 56. It is hard for me to believe that people in his age group will change professional career paths and be expected to NOT struggle… I noticed some hesitation or distrust about this comment when I made it from Tim's part**, but I respectfully challenged him to go out there and ask random people if they would change careers later in life. Most will say no because it is hard… I don't have literature or articles to back up this observation… **the goal of this observation is** NOT to use his age to excuse anything, but more to explain why things may be harder than expected, and **to recognize that is an obstacle**, and to develop a strategy to address this obstacle directly." (emphasis added). Dr. Luce went to Hess and complained about this email. Hess' response was that Dr. Luce was not taking feedback well.

20. On June 19, 2020, Iliana Neumann, (hereinafter sometimes referred to as "Neumann") Attending Faculty Member, called Dr. Luce and a few other physicians "gringos medicos" (White doctors) to a patient and told the patient it was fortunate that she would be dealing with Latinx doctors after Dr. Luce's last day on that rotation. Dr. Luce immediately complained

4

about this to Hess and Hardin.  On June 30, 2020, Dr. Luce wrote in his performance review of Neumann that she made this "racial slur" and that "racism of this sort, (of any sort) is wrong."

21. On June 30, 2020, Hardin informed Dr. Luce that Waco Family Medicine would not renew his contract to continue in the program.  Dr. Luce complained that Waco Family Medicine's criticism of him only began only after he complained about Jahrmarkt's ageism and subsequently, other comments, as well as Neumann's racism towards him.  Leamon was a witness to this too.  Hardin claimed that it was a unanimous decision by the faculty, but, upon information and belief, Hardin purposefully excluded many faculty members from the decision-making process.

22. On July 15, 2020, Hardin submitted a summative evaluation for Dr. Luce's year of residency.  Hardin wrote that Dr. Luce did not successfully complete all requirements for advancement to the second year of the program and refused to certify a Form L for Texas state medical licensure.  Hardin also rated Dr. Luce's overall performance in the program as "Fair", despite the fact that Dr. Luce received three "Excellent", eight "Good", three "Fair", and no "Poor" ratings in specific competency categories.

23. Dr. Luce was 57 years old at the time Waco Family Medicine terminated his residency program.

### III. CAUSES OF ACTION

#### Count 1: Discrimination in violation of ADEA and TCHRA

24. Dr. Luce incorporates paragraphs 1-23, *supra*, as if repeated verbatim.

25. The Age Discrimination in Employment Act ("ADEA") and the TCHRA prohibit discrimination targeted at an employee over 40 years of age on the basis of his age.

26. Defendant is an employer within the meaning of the TCHRA and the ADEA.

27. Dr. Luce was an employee within the meaning of the TCHRA and the ADEA at all times relevant to his Complaint.

28. Dr. Luce, an employee over 40 years of age, belongs to a class protected under the ADEA and the TCHRA.

29. Defendant discriminated against Dr. Luce's terms, conditions, and privileges of his employment by terminating him based on his age, in violation of the ADEA and the TCHRA.

30. Defendant discriminated against Dr. Luce based on his age intentionally and with reckless disregard to Dr. Luce's rights under the ADEA and the TCHRA.

31. The unlawful practices committed by Defendant directly caused Dr. Luce damages, as set forth below.

### Count 2: Retaliation
### in Violation of ADEA and TCHRA

32. Dr. Luce incorporates paragraphs 1-31, *supra*, as if repeated verbatim.

33. The Age Discrimination in Employment Act ("ADEA") and the TCHRA prohibit discrimination targeted at an employee over 40 years of age on the basis of his age.

34. Defendant is an employer within the meaning of the TCHRA and the ADEA.

35. Dr. Luce was an employee within the meaning of the TCHRA and the ADEA at all times relevant to his Complaint.

36. Dr. Luce, an employee over 40 years of age, belongs to a class protected under the ADEA and the TCHRA.

37. The ADEA and TCHRA prohibit retaliation against employees who oppose or report employment practices made unlawful thereunder.

38. Dr. Luce engaged in protected activity under the ADEA and TCHRA by making internal complaints about age discrimination, opposing the foregoing discrimination in the workplace, and requesting the employer take corrective action. Plaintiff engaged in this activity in good faith.

39. Plaintiff suffered adverse employment actions as a result of his protected activity including, but not limited to, being place on a remediation plan, an unfounded poor performance review, and the eventual termination of his employment.

40. A causal connection exists between Plaintiff's protected activity and Defendant's adverse employment actions, including the termination of Plaintiff's employment.

41. Defendant retaliated against Plaintiff intentionally and with reckless disregard to his rights under the ADEA and TCHRA.

42. Defendant's unlawful retaliation caused Plaintiff economic and non-economic harm, as set forth below.

### Count 3: Retaliation
### In Violation of Title VII and TCHRA

43. Dr. Luce incorporates paragraphs 1-31, *supra*, as if repeated verbatim.

44. Title VII and the TCHRA prohibit discrimination on the basis of race, color, and/or national origin in employment.

45. Defendant is an employer within the meaning of Title VII and the TCHRA.

46. Plaintiff was an employee within the meaning of Title VII and the TCHRA and at all times relevant to his complaint.

47. Title VII and TCHRA prohibit retaliation against employees who oppose or report employment practices made unlawful thereunder.

48. Plaintiff engaged in protected activity under Title VII and TCHRA by making an internal race, color, and/or national origin discrimination complaint, opposing the foregoing discrimination in the workplace, and requesting the employer take corrective action. Plaintiff engaged in this activity in good faith.

49. Plaintiff suffered adverse employment actions as a result of his protected activity including, but not limited to, slurs, workplace hostility, denials of promotions, and the eventual termination of his employment.

50. A causal connection exists between Plaintiff's protected activity and Defendant's adverse employment actions, including the termination of Plaintiff's employment.

51. Defendant retaliated against Plaintiff intentionally and with reckless disregard to his rights under Title VII and the TCHRA.

52. Defendant' unlawful retaliation caused Plaintiff economic and non-economic harm, as set forth below.

## IV.
## DAMAGES

53. As a result of Defendant's unlawful conduct, Plaintiff has suffered economic damages, including past and future lost income, interest on back and front pay, lost earning capacity in the past and future, lost benefits under the contract or employment relationship, job search expenses, injury to his credit standing, and other consequential and incidental financial damages.

54. Plaintiff has also incurred other compensatory and actual damages as a result of Defendant's unlawful conduct, including emotional pain and suffering, mental anguish, loss of enjoyment of life injury to professional standing, injury to character and reputation and other non-pecuniary losses.

55. Defendant acted in reckless disregard to Dr. Luce's right to be free from discrimination and retaliation and intentionally engaged in an unlawful employment practice by discriminating and retaliating against Dr. Luce.

56. Defendants' oppressive and/or malicious conduct calls for the imposition of compensatory and punitive damages under the ADEA, Title VII, and TEX. LAB. CODE § 21.2585(d) in an amount sufficient to deter Defendant from engaging in such acts of discrimination and retaliation in the future.

## V.
## ATTORNEYS' FEES

57. A prevailing party may recover reasonable attorneys' and experts' fees under the ADEA, TCHRA and Title VII.

58. Dr. Luce seeks all reasonable and necessary attorneys' fees and expert witness fees in this case from Defendant.

59. Dr. Luce additionally seeks recovery of all costs associated with the prosecution of this action.

## VI.
## JURY DEMAND

60. Dr. Luce demands a trial by jury of all the issues and facts in this case.

## VII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Dr. Luce requests that:

A. The Court assume jurisdiction of this cause and that Defendant be cited to appear;

B. The Court award Dr. Luce economic and liquidated or non-economic damages, as specified above;

C. The Court award Dr. Luce the equitable remedy of reinstatement or, in the alternative,

front pay;

D. The Court award Dr. Luce his reasonable attorneys' and expert fees and costs;

E. The Court award Dr. Luce pre- and post-judgment interest at the highest rates allowed; and

F. The Court award Dr. Luce any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

**ROSS • SCALISE LAW GROUP**
1104 San Antonio Street
Austin, Texas 78701
(512) 474-7677 Telephone
(512) 474-5306 Facsimile

*/s/ Daniel B. Ross*
**DANIEL B. ROSS**
Texas Bar No. 789810
dan@rosslawgroup.com

**ATTORNEYS FOR PLAINTIFF**